UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAIZHOU XIAOTANGLANG INFANT AND CHILD
PRODUCTS CO., LTD.,

Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

Defendants.
_____/

# COMPLAINT

Plaintiff TAIZHOU XIAOTANGLANG INFANT AND CHILD PRODUCTS CO., LTD. ("Taizhou" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A (collectively, "Defendants"). Defendants are promoting, selling, offering for sale, and importing goods into the United States that infringe Taizhou's patent within this district through various Internet-based e-commerce stores using the seller identities set forth on Schedule A (the "Seller IDs") and alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit addresses patent infringement by e-commerce store operators who exploit the Plaintiff's reputation and goodwill. These operators manufacture, use, offer for sale, sell, or import into the United States unauthorized and unlicensed products that infringe on the Plaintiff's design patent, U.S. Patent No. US D1,013,129 S.

2. Plaintiff holds a valid and enforceable patent, with all rights, title, and interest in the Patent. The United States Patent and Trademark Office duly and legally issued this patent.

1

Proper and accurate copies are attached as Exhibit A.

3. Each Defendant directly or indirectly imports, develops, designs, manufactures, distributes, markets, offers for sale, and/or sells products that infringe on Plaintiff's patent (the "Infringing Products") within the United States, including this Judicial District. Defendants intentionally direct these infringing activities toward this district through fully interactive commercial e-commerce stores using their online marketplace accounts and Seller IDs on Amazon.com ("Amazon").

4. Defendants' Internet Stores appear to sell Plaintiff's genuine products while selling inferior imitations of such products.

5. Defendants' Internet Stores share distinctive identifiers, including similar design elements and commonalities among their Infringing Products, establishing a logical connection between them. These sites suggest that the Defendants' illegal operations stem from the same transaction, occurrence, or series of transactions or occurrences.

6. Defendants go to great lengths to conceal their identities and the full extent of their illegal operations to avoid liability. As a result, Plaintiff is compelled to file this action to stop the Defendants' patent infringement and protect unsuspecting consumers from purchasing the Infringing Products online.

7. The Defendants' actions have caused and continue to cause irreparable harm to the Plaintiff, depriving it of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing products that embody the designs protected by the Patent. As a result, the Plaintiff seeks injunctive and monetary relief.

8. Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of the Infringing Products have directly and proximately caused the harm and damages sustained by Plaintiff.

9. This Court maintains personal jurisdiction over each Defendant because they

conduct substantial business in Florida and this Judicial District. Additionally, the acts and events that give rise to this lawsuit, which each Defendant is accused of, occurred in Florida and this Judicial District.

10. In addition, each Defendant has offered to sell and ship Infringing Products into this Judicial District.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States under 35 U.S.C. § 1 *et seq.*, §§ 271, 285, 283, 284, 285, 289, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

12. This Court maintains personal jurisdiction in this district over Defendants because they actively direct business activities toward and engage with consumers throughout the United States, including Florida and this district. They operate through Internet-based e-commerce stores and fully interactive commercial websites accessible in Florida and use the Defendant Internet Stores and Seller IDs.

13. Upon information and belief, Defendants systematically direct and target their business activities at consumers in the U.S., including those in Florida and this Judicial District. They do this through accounts on Amazon's online marketplace platform and any undiscovered accounts associated with the Defendants and their officers, employees, agents, servants, and anyone working in concert with them (collectively referred to as "User Accounts"). Through these platforms, U.S. consumers, including those in Florida and specifically in this Judicial District, can view the Defendants' online marketplace accounts (the "Defendants' Merchant Storefronts"), communicate about listings for Infringing Products (as defined below), and place orders, receive invoices, and purchase Infringing Products for delivery in the U.S., including Florida and this Judicial District, thereby establishing regular business connections with the U.S.

3

market.

14. Upon information and belief, Defendants conducted transactions with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Infringing Products.

15. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and 1400(a) because the Defendants committed acts of patent infringement in this Judicial District, conduct substantial business here, maintain registered agents in this Judicial District, and either reside or can be found in this district.

## PLAINTIFF TAIZHOU

16. Plaintiff Taizhou is a limited company based out of Zhejiang, China, and is the registered owner of the Patent referred to above and its federal registrations attached as Exhibit A.

17. Taizhou is a pioneer in the high-end baby and toddler bathroom appliances space. Plaintiff offers and sells a line of bathtub appliances among its many groundbreaking offerings.

## THE PATENTED PRODUCT

18. The appliance is a revolutionary bathtub designed to be portable and specifically for infants and toddlers. The tubs are collapsable and contain a soft floating cushion, bath net, and thermometer. Each product element is intended to elevate the baby's bathing experience.

19. Plaintiff is the official source of the product in the United States.

20. Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the Patent (attached as Exhibit A).

21. The Product uses the technology and inventions claimed in and, in most cases, incorporates at least part of the designs shown in the Design Patent.

## THE DEFENDANTS

22. Defendants are individuals and business entities believed to reside primarily in the People's Republic of China. Defendants conduct business throughout the United States, including within Florida and this Judicial District, through fully interactive commercial websites and online marketplaces operating under their Defendant Internet Stores and Seller IDs. Each Defendant targets the U.S., including Florida, and has offered for sale, and, on information and belief, has sold and continues to sell products that infringe Plaintiff's intellectual property to consumers in the U.S., including Florida and this Judicial District.

23. Defendants are the current and former controlling forces behind the sale and offering for sale of products that infringe Plaintiff's intellectual property rights, as described herein, using the Seller IDs.

24. Defendants actively compete with Plaintiff by advertising, selling, offering for sale, and importing patent-infringing goods to consumers in the United States and this district through their Internet-based e-commerce stores, using the Seller IDs and other unidentified aliases. They have deliberately targeted Florida consumers by promoting, offering, selling, and shipping infringing products into the state.

25. Upon information and belief, Defendants have anonymously registered and operated specific Seller IDs solely to carry out illegal infringing activities.

26. Upon information and belief, Defendants will continue registering or acquiring new seller identification aliases to sell and offer goods that infringe the Patent unless they are preliminarily and permanently enjoined.

## THE DEFENDANTS' UNLAWFUL CONDUCT

27. The success of Plaintiff's Products has led to a significant influx of products that infringe on Plaintiff's Patent and other intellectual property rights.

28. Plaintiff has identified numerous domain names connected to fully interactive websites and marketplace listings on Amazon, including Defendants' Merchant Storefronts. These

sites have been, or are currently, offering for sale, selling, and importing products that infringe Plaintiff's Patent to consumers in this Judicial District and across the United States.

29. Defendants have continued to create online marketplaces and internet stores, such as the Defendant Internet Stores. These marketplaces attract tens of millions of visits annually and generate over $135 billion in online sales. The U.S. Department of Homeland Security's report on intellectual property rights seizures reveals that the manufacturer's suggested retail price of goods seized by the government in fiscal year 2021 exceeded $3.3 billion. Additionally, websites like the Defendant Internet Stores contribute to tens of thousands of lost jobs for legitimate businesses and cause broader economic harm, including lost tax revenue, each year.

30. Based on personal knowledge and belief, Defendants designed their Internet Stores to make them appear to unknowing consumers as authorized online retailers, outlet stores, or wholesalers selling genuine Products.

31. Many of the Defendant Internet Stores appear sophisticated and accept payments in U.S. dollars through credit cards, Western Union, and PayPal. These stores often incorporate images and design elements that make it challenging for consumers to differentiate between counterfeit sites and authorized websites.

32. Defendants further enhance the illusion of legitimacy by providing "live 24/7" customer service and displaying authenticity and security indicators that consumers associate with authorized retailers. These include logos from McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal®.

33. Plaintiff has not licensed or authorized Defendants to use the Patent, and none of the Defendants are authorized retailers of genuine Products.

34. Based on personal knowledge and belief, Defendants deceive unsuspecting consumers by using parts of the Plaintiff's Patent without authorization in the product descriptions

6

of their Defendant Internet Stores to attract customers.

35. Upon information and belief, Defendants employ unauthorized search engine optimization (SEO) tactics and social media spamming to ensure their listings appear at or near the top of search results, misdirecting consumers seeking genuine Products. They also use similar tactics to promote new domain names after others are shut down. Consequently, Plaintiff seeks to disable the Defendant Domain Names that Defendants use to continue selling infringing Products in this District.

36. Based on information and belief, the Defendants take significant measures to conceal their identities, frequently using multiple fictitious names and addresses to register and operate their extensive network of Defendant Internet Stores.

37. For example, individuals selling Infringing Products often register their domain names and/or User Accounts with incomplete information, random letters, or missing cities and states.

38. Many Defendant Domain Names employ privacy services to hide the owners' identities and contact information. Based on personal knowledge and belief, Defendants frequently create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of the Complaint and other unknown fictitious names and addresses.

39. Based on personal knowledge and belief, many Defendant Internet Stores exhibit numerous similarities despite operating under multiple fictitious names. For instance, some stores have nearly identical layouts, even though different aliases were used to register their domain names.

40. Additionally, the Infringing Products available in the Defendant Internet Stores display similarities and indicators of being related, suggesting that a common source manufactured them. This implies, upon information and belief, that the Defendants are interconnected.

41. The Defendant Internet Stores share several notable standard features, including accepted payment methods, checkout processes, metadata, illegitimate SEO tactics, HTML user-

7

defined variables, domain redirection, absence of contact information, identical or similar pricing, volume sales discounts, comparable hosting services, similar name servers, and the use of the exact text and images.

42. Furthermore, Defendants in this case and those in similar cases involving online sellers of infringing products utilize a range of common strategies to avoid enforcement actions. For example, they often create new online marketplace accounts under different User Accounts immediately after being notified of a lawsuit.

43. Sellers of infringing products frequently transfer their website hosting to rogue servers outside the United States when they receive notice of a lawsuit. These rogue servers are well-known for disregarding takedown requests from intellectual property owners.

44. Sellers of infringing products commonly ship items in small quantities via international mail to reduce the likelihood of detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report highlighted that the Internet has contributed to an "explosive growth" in small packages containing counterfeit goods shipped through mail and express carriers.

45. Moreover, sellers of infringing products, like Defendants, often maintain multiple credit card merchant accounts and PayPal accounts through various payment gateways, allowing them to continue their operations despite Plaintiff's enforcement efforts.

46. Based on personal knowledge and belief, Defendants hold offshore bank accounts and frequently transfer funds from their PayPal accounts to these offshore accounts, which are outside the jurisdiction of this Court. An analysis of PayPal transaction logs from previous similar cases shows that offshore counterfeiters commonly transfer funds from U.S.-based PayPal accounts to foreign bank accounts beyond the jurisdiction of this Court.

47. Defendants have knowingly and willfully used, and continue to use, Plaintiff's Patent

without authorization or license in connection with the advertisement, distribution, offering for sale, and sale of Infringing Products over the Internet in the United States and Florida.

48. Each Defendant Internet Store ships to the United States, including Florida (in this Judicial District). Based on information and belief, each Defendant has offered products that infringe on Plaintiff's Patent for sale in the United States, including Florida (in this Judicial District). This conduct will likely cause confusion, mistakes, and deception among consumers, leading to irreparable harm to Plaintiff.

49. As detailed below, Defendants promote, offer for sale, sell, and import Infringing Products into the United States that violate Plaintiff's Patent through their Internet e-commerce stores operating under the Defendant Internet Stores and Seller IDs.

50. Defendants conduct their infringing activities without Plaintiff's consent or authorization.

51. Defendants' infringing activities described herein have caused and continue to cause substantial harm to Plaintiff, resulting in lost sales, price erosion, diminished market share, and a significant negative impact on Plaintiff's goodwill.

52. Plaintiff has no adequate remedy at law.

53. Plaintiff is experiencing irreparable injury and has incurred substantial damages due to Defendants' unauthorized and wrongful use of the Patent. If this Court does not issue a preliminary and permanent injunction against Defendants' infringement, Plaintiff will continue to suffer harm.

**FIRST CAUSE OF ACTION**
**DESIGN PATENT INFRINGEMENT (35 U.S.C. § 289)**

54. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–53 of this Complaint.

55. Defendants manufacture, distribute, offer for sale, sell, and/or import products into

the United States that directly or indirectly infringe on the Design Patent under the doctrine of equivalents.

56. Defendants have infringed the Design Patent through the actions described above and will continue to unless this Court intervenes with an injunction. Their unlawful conduct has caused Plaintiff irreparable harm, including the loss of its legal rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the patented inventions and lost sales resulting from these infringing activities. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283. If this Court does not issue a preliminary and permanent injunction against Defendants and any collaborators from infringing the Design Patent, Plaintiff will continue to suffer irreparable harm.

57. Defendants' infringement of the Design Patent in connection with the Infringing Products has been and continues to be willful.

58. Due to Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, monetary damages, and other remedies as outlined in the Patent Act. This includes recovering damages sufficient to compensate for the infringement, Defendants' profits under 35 U.S.C. § 289, and any additional damages deemed appropriate under 35 U.S.C. § 284.

**SECOND CAUSE OF ACTION**
**DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)**

59. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–53 of this Complaint.

60. Defendants make, use, sell, offer for sale, and/or import Infringing Products into the United States for subsequent sale or use without authorization, directly and/or indirectly infringing the Design Patent.

61. Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

62. Defendants infringed on the Design Patent through the actions described above and

will continue to do so unless the Court intervenes. Their wrongful conduct has caused Plaintiff to suffer irreparable harm due to the loss of its rightful patent rights, which allow it to exclude others from making, using, selling, offering for sale, and importing the patented invention.

63. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

64. Plaintiff is entitled to recover damages adequate to compensate for the infringement under 35 U.S.C. §§ 284 289, including Defendants' profits.

## **FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

a) The Court orders that the Defendants, along with their affiliates, officers, agents, servants, employees, attorneys, confederates, and anyone acting on their behalf or in concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

i. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that includes any reproduction, embodiment, copy, or colorable imitation of the designs claimed in the Design Patent;

ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Patent;

iii. committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiff or are sponsored by, approved by, or otherwise connected with Plaintiff;

iv. further infringing the Plaintiff's Patent and damaging Plaintiff's goodwill;

11

    v.  aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Patent;

    vi.  shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe the Patent;

    vii.  using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell Infringing Products;

    viii.  operating and/or hosting online marketplace accounts at the Defendant Internet Stores involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing the Patent.

  b)  Entry of an Order that Amazon, DHgate, Etsy, Shein, Temu, Walmart, Wish, and any other online marketplace account provider:

    i.  disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants listed on Schedule A;

    ii.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products; and

    iii.  take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

  c)  That Plaintiff be awarded such damages as it shall prove at trial against Defendants

that are adequate to compensate Plaintiff for Defendants' infringement of the Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, under 35 U.S.C. § 284.

    d)    That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of Plaintiff's Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

    e)    In the alternative, that Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's Patent, pursuant to 35 U.S.C. § 289;

    f)    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

    g)    Award any and all other relief that this Court deems just and proper.

Dated: November 11, 2024

                                    Respectfully submitted,

                                      **HEITNER LEGAL, P.L.L.C.**
                                      Attorney for Plaintiff
                                      215 Hendricks Isle
                                      Fort Lauderdale, FL 33301
                                      Telephone: (954)-558-6999
                                      Email: darren@heitnerlegal.com

                                      By:_/s/ Darren Heitner_
                                      Darren A. Heitner, Esq.
                                      Florida Bar No. 85956